IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 17-cv-02011-LTB

KATHY M. CAYNOR,

   Plaintiff,
v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

   Defendant.

---

ORDER

---

  Plaintiff Kathy M. Caynor appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and her application for supplemental security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist me in the determination of this appeal.

  After consideration of the parties' briefs, as well as the administrative record, I REVERSE and REMAND the Commissioner's final order for further proceedings.

    I.  STATEMENT OF THE CASE

  Plaintiff is a 66 year-old woman who has performed work as an administrative and personal assistant. [Administrative Record ("AR") 166, 171, 204]

1

She seeks judicial review of SSA's decision denying her application for disability insurance benefits and supplemental security income. Pl.'s Br., ECF No. 17 at 2. Plaintiff filed her applications in June 2014 alleging that her disability began in January 2014. [AR 140, 147]

The applications were initially denied in September 2014. [AR 55–65, 83–85] The Administrative Law Judge ("ALJ") conducted an evidentiary hearing and issued a written ruling on June 29, 2016. [AR 17–42, 66–81] In that ruling, the ALJ denied Plaintiff's applications on the basis that she was not disabled because she had the ability to perform her past relevant work. [AR 76–77] The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination, making SSA's denial final for the purpose of judicial review. [AR 1–5]; *see* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff timely filed her Complaint with this court seeking review of SSA's final decision. ECF No. 1.

## II. BACKGROUND

### A. Relevant Medical History

The relevant medical history relates to Plaintiff's mental ailments. In February 2014, Plaintiff saw Randal Villalovas, M.D. at Heart of the Rockies Regional Medical Center. [AR 285] Dr. Villalovas explained that Plaintiff's chief complaint and history of present illness related to a "significant history of bipolar disorder, treated with lithium for the past 20 to 30 years." [*Id.*] She complained of increasing symptoms of "weakness, difficulty walking, and general body pain" and described shakiness and unsteadiness of gait. [*Id.*] Dr. Villanovas noted that Plaintiff reported that "she has not had her lithium level checked in the past, and

2

their current symptoms are consistent with lithium toxicity." [AR 286] He referred her to a psychiatrist. [*Id.*]

Shortly thereafter, Plaintiff saw Amy Ellis, M.D. for an initial psychiatric evaluation. [AR 357] Dr. Ellis noted that Plaintiff said her functioning was increasingly poor over the prior few months. [*Id.*] Plaintiff arrived in a wheelchair and said she could not sleep, had nearly all-day episodes of nausea and vomiting, severe tremors, low energy, poor concentration, and no appetite. [*Id.*] Plaintiff denied suicidal ideation or psychotic symptoms of hallucinations or paranoia. [*Id.*] Dr. Ellis noted that Plaintiff showed symptoms of lithium toxicity and Plaintiff had to leave the evaluation midway-through because of a hot flash consistent with a panic attack. [AR 358] In part, Dr. Ellis diagnosed Plaintiff with "Bipolar I Disorder; most recent episode depressed, severe without psychotic features; panic disorder with agoraphobia", lithium toxicity, and problems related to limited social interaction. [AR 359] Dr. Ellis directed Plaintiff to wean off lithium and prescribed Ativan to ameliorate panic attacks. [*Id.*]

Dr. Ellis saw Plaintiff on a follow-up two weeks later. [AR 354] Plaintiff noted issues with urination which interfered with her ability to sleep. [*Id.*] She stated that her strength was returning, potentially because of her weaning off lithium. [*Id.*] Dr. Ellis noted that Plaintiff's anxiety and panic attacks were occurring less, but she was experiencing visual hallucinations in the form of red and purple color ribbons. [*Id.*] Dr. Ellis wrote that Plaintiff was calm initially, but became easily anxious and began to experience a panic attack. [*Id.*] Dr. Ellis suggested discontinuing lithium

3

completely and trying Seroquel in a low dose to help with sleep, psychotic symptoms, and mood stabilization. [AR 355] These general sentiments were echoed by Dr. Villanovas. [AR 284–89]

At a follow up in April 2014, Dr. Ellis noted Plaintiff was improving and responding to treatment regarding her bipolar disorder. [AR 352] Dr. Ellis found Plaintiff to be anxious, but otherwise noted an unremarkable psychiatric exam. [AR 352–53] This included normal thought processes, normal thought content, fair insight and judgment, normal concentration, normal memory, and normal higher cognitive functioning. [*Id.*] Dr. Ellis noted similar findings in additional follow-up appointments in May, June, July, August, and September. [AR 335–37, 340–50]

In August 2014, Plaintiff had a consultative exam performed by Matthew Simpson, M.D. [AR 300–06] Plaintiff stated to Dr. Simpson that since ceasing lithium, her symptoms had been improving, though she did not feel completely back to normal. [AR 300] Dr. Simpson wrote that Plaintiff's switch to other medications left her feeling in better control of her bipolar disorder. [*Id.*] Dr. Simpson noted that Plaintiff "was pleasant, cooperative, and appeared in no acute distress," and "did not appear particularly anxious, agitated, or drowsy and responded appropriately with adequate effort throughout." [AR 302]

In November and January of 2015, Dr. Ellis noted similar findings as in her prior records, except that Plaintiff's mood was anxious and depressed in relation to her husband's temperament. [AR 330, 334] In March 2015, Dr. Ellis again noted Plaintiff's mood as depressed and anxious because of her home environment and

wrote that her status was worsening. [AR 321–22] The next appointment, Dr. Ellis noted Plaintiff's mood as euthymic and content, but that she was mildly anxious due to her husband's back pain. [AR 318] Similar findings followed in June, July, and August. [AR 407–423] This irritation from her home life and her anxious thoughts continued in October, although she noted her mood had "slightly improved in regards to feeling irritable or depressed since initiation of Cymbalta" from her last appointment. [AR 404–05]

In December, after Plaintiff had a sleep study performed, she was diagnosed with obstructive sleep apnea. [AR 397] Plaintiff's spouse noted that she seemed more emotional and forgetful and Plaintiff added that she was anxious about this increase in forgetfulness. [AR 395–96] Later in December, Plaintiff relayed that she felt similarly to when she was on lithium, although with fewer outbursts and it was noted that "[i]n general things have improved." [AR 389] Dr. Ellis noted that Plaintiff's forgetfulness could be related to an MRI which evidenced atrophy, but testing did not indicate early signs of dementia. [AR 368, 391]

In January 2016, Plaintiff had a generally positive psychiatric exam, but noted she felt emotional. [AR 384–86] In March, Plaintiff's final appointment with Dr. Ellis in the record occurred. [AR 377] Plaintiff stated she was "feeling good today," but had been tearful and emotional of late. [*Id.*] She felt her mood was "pretty stable." [AR 379]

### III. LEGAL STANDARDS

#### A. SSA's Five-Step Process for Determining Disability

A claimant is "disabled" under Title II of the Social Security Act if she is

5

unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see Bowen v. Yuckert, 482 U.S. 137, 140 (1987). SSA has established a five-step sequential evaluation for determining whether a claimant is disabled and thus entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920.

At step one, SSA asks whether the claimant is presently engaged in "substantial gainful activity." *Id.* If she is, benefits are denied and the inquiry stops. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, SSA asks whether the claimant has a "severe impairment"—that is, an impairment or combination of impairments that "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If she does not, benefits are denied and the inquiry stops. If she does, SSA moves on to step three, where it determines whether the claimant's impairments "meet or equal" one of the "listed impairments"—impairments so severe that SSA has determined that a claimant who has them is conclusively disabled without regard to the claimant's age, education, or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, SSA goes to step four.

At step four, SSA determines the claimant's residual functional capacity ("RFC")—that is, what she is still able to do despite her impairments—and asks whether the claimant can do any of her "past relevant work" given that RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). If not, SSA goes to the fifth and final step,

6

where it has the burden of showing that the claimant's RFC allows her to do other work in the national economy in view of her age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

In contrast with step five, the claimant has "the burden of establishing a prima facie case of disability at steps one through four." *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003).

### B. Standard of Review

My review concerns only whether SSA's factual findings are supported by substantial evidence and whether the correct legal standards were applied. *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015). With regard to the law, reversal may be appropriate when SSA fails to apply proper legal standards. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). With regard to the evidence, I must "determine whether the findings of fact . . . are based upon substantial evidence, and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).

"Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The record must demonstrate that the ALJ considered all the evidence, but an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). I examine the record as a whole and may not reweigh the evidence or

substitute my judgment for that of the ALJ. *Flaherty v. Astrue*, 515 F.3d at 1070.

## IV. THE ALJ'S RULING

In his ruling, the ALJ concluded under the first step that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 8, 2014. [AR 71] Under step two, the ALJ determined that Plaintiff had the severe impairment of degenerative disc disease. [*Id.*]

The ALJ concluded under step three that the enumerated severe impairments did not meet or medically equal an impairment in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listing"). [AR 73] The ALJ found that Plaintiff had the RFC to perform light work except that she was limited in that she could "occasionally bend, squat and kneel but never climb ladders, ropes or scaffolds [and] must avoid hazardous work areas." [*Id.*]

Under step four, the ALJ found that Plaintiff was able to perform past relevant work. [AR 76] The ALJ supported her decision based in part on the testimony of the vocational expert and related hypotheticals. [AR 77] Thus, the ALJ concluded that Plaintiff was not disabled. [*Id.*]

## V. ISSUE ON APPEAL

In appealing the ALJ's decision, Plaintiff argues that the ALJ erred by: (1) deeming Plaintiff's mental impairments as non-severe; (2) inadequately discussing Plaintiff's treatment from Dr. Ellis; and (3) improperly formulating Plaintiff's RFC. Plaintiff contends that if her RFC was properly considered, the facts warrant reversal and an award of benefits. Due to my analysis on the first issue, I do not

8

analyze closely the second or third issues.

## A. The ALJ's finding of Plaintiff's mental impairments as non-severe

Plaintiff argues that substantial evidence did not support the ALJ's decision finding her affective disorder medically determinable, but not severe. ECF No. 17 at 5. Plaintiff points to inaccuracies in the ALJ's reasoning which she argues evidences the ALJ's misunderstanding of Plaintiff's medical record and her complaints. *Id.* at 5–11. Plaintiff claims that the ALJ based his opinions almost solely off the opinion of the state agency psychiatric consultant. *Id.* at 8–11. In turn, Plaintiff contends that the consultant's opinion was both stale—it was performed 21 months prior to the hearing—and evidenced a misunderstanding of the record. *Id.*

SSA responds by positing that the ALJ need not base his RFC finding on a specific medical opinion. Def.'s Resp., ECF No. 18 at 7. It states that the ALJ's opinion was consistent with the state agency psychiatric consultant and the ALJ appropriately determined that the consultant's opinion was reasonable and based on sufficient evidence. *Id.* SSA contends that the consultant indeed did not consider the most current records, but did consider enough to make the opinion valid at that time. *Id.* at 8. It continues that the ALJ's review of the subsequent records does not show significant variation in the consultant's opinion and the ALJ's characterization of Dr. Ellis as a primary care provider was immaterial. *Id.* Further, it argues that the ALJ accurately assigned little weight to Dr. Ellis' opinions. *Id.* at 8–10.

In his opinion, the ALJ explained that Plaintiff's

[M]edically determinable mental impairment of affective disorder does

9

not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe. The claimant testified she was forgetful and she had poor concentration affecting her ability to keep her thoughts straight but mental status examinations showed her memory, attention and concentration were intact (Exhibits 5F, 7F). Her primary care provider did prescribe medication for diminished moods but she was reportedly stable with medication and there was no evidence she was referred for more in-depth psychiatric treatment (Exhibits 3F/1, 7F/7). A State agency psychiatric consultant opined the claimant's affective disorder was non-severe (Exhibit 2A).

[AR 72] The ALJ elaborated on his analysis of the state agency psychiatric consultant's opinion, explaining that the consultant

> [O]pined the claimant's affective disorder is non-severe and she has no more than mild limitations (Exhibit 2A). The claimant testified she was forgetful and she had poor concentration affecting her ability to keep her thoughts straight but mental status examinations showed her memory, attention and concentration were intact (Exhibits 5F, 7F). Her primary care provider did prescribe medication for diminished moods but [her] mood was reportedly stable with medication and there was no evidence she was referred for more in-depth psychiatric treatment (Exhibits 3F/l, 7F/7).

[AR 76] The state agency psychiatric consultant wrote that Plaintiff had sought no specific, related treatment other than medicine management from her primary care provider. [AR 61 ("Clmt has sought no specific, related Tx other than med management by PCP.")]

There indeed appears to be a discrepancy between the record and the ALJ's opinion. The ALJ referred to Dr. Ellis as Plaintiff's "primary care provider" and "treating provider." [AR 72, 75] He mentions twice that Plaintiff was not referred for more in-depth psychiatric treatment. [AR 72, 76] The ALJ never established whether he was aware that Dr. Ellis was indeed a psychiatrist and that Plaintiff did not seek more in-depth psychiatric treatment beyond her regular appointments

10

with Dr. Ellis.

It is possible that the ALJ was referencing Dr. Ellis' repeated notes where she strongly suggested Plaintiff see a therapist on a weekly basis. [*See e.g.*, AR 334, 348, 391, 406] It is also possible that the ALJ thought Dr. Ellis was not a psychiatrist, but was merely prescribing the medication for diminished moods. Maybe the ALJ did not significantly consider whether Dr. Ellis was a psychiatrist and merely repeated the state agency psychiatric consultant's brief missive noted *supra*.

SSA writes that Plaintiff "quibbles with the ALJ's characterization of Dr. Ellis as a primary care physician[], but the ALJ acknowledged that Dr. Ellis was a treating mental health provider, and Dr. Ellis's treatment notes demonstrate that she managed Plaintiff's physical and mental care and was Plaintiff's primary physician at Heart of the Rockies Medical Center[]." ECF No. 18 at 8. However, Defendant does not point to the ALJ's decision where he explicitly recognized that that Dr. Ellis was a treating mental health provider and glosses over the fact that Plaintiff was referred to Dr. Ellis by Dr. Villanovas for a psychiatric evaluation. [AR 357]

Either way, I may not make post hoc rationalizations of the ALJ's conclusion. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) ("Judicial review is limited to the reasons stated in the ALJ's decision . . . .); *cf. Brownrigg v. Berryhill*, 688 F. App'x 542, 549 (10th Cir. 2017) (the ALJ erred when did he not explicitly justify the opinions he gave regarding the weight given to a doctor's opinion and

11

"filling in the blanks is not permitted") (unpublished).

While the ALJ provided a discussion supporting the weight he gave to Dr. Ellis' opinion, it is possible that an underpinning assumption upon which he based that opinion was flawed. As such, I must remand this case for the ALJ to clarify whether Dr. Ellis' role as a psychiatrist to Plaintiff would change his assessment that Plaintiff did not seek "more in-depth psychiatric treatment." [AR 76] Attendant to this, the ALJ must reweigh Dr. Ellis' opinion and must reformulate Plaintiff's RFC after he recognizes Dr. Ellis' role to Plaintiff.

Contrary to Plaintiff's assertion, this is not a case where reversal should occur. Whether to remand or reverse is in my discretion and a factor considered is whether "given the available evidence, remand for additional fact-finding would serve any useful purpose [or] would merely delay the receipt of benefits." *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (quoting *Harris v. Sec'y of Health & Human Servs.,* 821 F.2d 541, 545 (10th Cir.1987) (alterations omitted). In her brief, Plaintiff intonated that SSA should seek another, more current exam. ECF No. 17 at 11. I do not order as much, but the potential for additional fact-finding makes this case more appropriate for remand.

## VI. CONCLUSION

For the above reasons, SSA's decision is REVERSED, and this case is REMANDED for proceedings consistent with this opinion. Upon recognition that Dr. Ellis was Plaintiff's psychiatrist, the ALJ must reconsider his decision, especially his assessment that Plaintiff did not seek "more in-depth psychiatric

treatment." [AR 76] Attendant to this, the ALJ must reweigh Dr. Ellis' opinion and must reformulate Plaintiff's RFC after he recognizes Dr. Ellis' role to Plaintiff.

Dated: December 4, 2018, in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE